ADDISON ASKINS and WIFE *v.* J. F. COE *et al.*

ESTOPPEL. *Lien. Judgment. Assignment.* A. by parol purchased a tract of land of G., paying part of purchase money. C. was the assignee of a judgment in circuit court against G. Execution was issued and levied upon the land sold to A. Afterwards A. and G. met to complete their purchase, and balance of purchase money was paid and deed executed by G. to A. The money, at the request of the parties, was counted by C. and the deed acknowledged before him as county court clerk, who failed to disclose his lien upon said land. Upon a bill filed by A. against C., claiming that he was estopped from asserting his lien by the assignment of the judgment. *Held,* that C. was not

Askins and Wife *v.* Coe.

estopped. No word or act of his had any effect in inducing A. and G. to make or consummate the trade. The principle of estoppel operates where a party who is affected by it has, by word or conduct, mislead another who will be injured unless an estoppel is enforced.

FROM WILSON.

Appeal from the Chancery Court at Lebanon.   GEO. E. SEAY, Ch.

STOKES & SON and R. E. & L. THOMPSON for complainants.

MARTIN & BEARD for defendants.

COOKE, Sp. J., delivered the opinion of the court.

One Frizzell recorded a judgment in the circuit court on the 6th of October, 1874, against W. F. Goldston and John M. Goldston as principals, J. H. Allen as surety, and respondent J. F. Coe assignor of a note. On the 17th of the same month Frizzell assigned said judgment on the records of the court to Coe. On the 31st of May, 1875, execution was issued upon said judgment and levied upon twenty-six acres of land in the same county where the judgment was recorded, as the property of John M. Goldston, and this bill is filed by Askins and wife to enjoin the sale of the land. Complainant Askins had purchased said land by parol from John M. Goldston in September, 1874, and had paid over $500 of the purchase money, the contract price being $1,200. Goldston lived upon the land, being the head of a family and owned no other

43—VOL. 12.

lands of any value.    On the 4th of November, 1874, Goldston and Askins having met for the purpose of paying over the residue of the purchase money by Askins to Goldston, and taking Goldston's deed for said land, had procured a deed to be written and ready to be executed and delivered upon the residue of the purchase money, $620, being paid over.   When they came to count the money, however, they were mutually distrustful of each other and got up a controversy between themselves, and finally agreed they would go to respondent Coe, who was clerk of the county court, and get him to count the money for them, which they did, and he counted the money at their request and passed it to Goldston, and thereupon the deed to the land was signed and acknowledged before Coe as county court clerk, and certified by him.

The equity set up by the bill is that Coe, if he had a lien by the assignment of said judgment to him, was estopped from asserting it by the fact of his having counted said money and taken the acknowledgment of said deed without having set up or disclosed his lien upon the land to the purchaser, Askins.   It is also further averred, that respondent Coe had no lien upon the land at the time of the conveyance, for the reason that no notice of the assignment of the judgment to him had been given to the judgment debtor at that time, and charge the action of Coe was a fraud upon them.

The answer admits that Coe did count the money at the request of the parties, but denies that he either said or did any thing that influenced either of the

parties to the transaction in the slightest degree. Says in substance, that he knew he had the assignment of the judgment, but did not know at the time that it gave him a lien, or that he had a lien upon the land. Says he believes that Goldston was selling the land to avoid paying the judgment, but did not know that he could prevent it. Says he took the acknowledgment of the deed in the discharge of his duty as a public officer; denies any fraudulent conduct on his part, or that complainants are entitled to any relief.

The chancellor dismissed the bill, and the Referees have reported that his decree should be affirmed, and we are inclined to concur with them. Both the judgment and the assignment were matters of record in the circuit court of the county, where the land was situate, and was a matter of easy ascertainment on part of the purchaser by the exercise of even ordinary diligence, even if in fact he did not have actual knowledge of the same. The record shows that the contract of purchase had been made and a good portion of the money actually paid before the date of the transaction complained of, and even before the assignment of the judgment to respondent Coe, and that the parties had made their own contract, and were about to finally consummate it without any reference whatever to Coe, or knowledge on his part of the same; and that the calling upon him to count the residue of the purchase money was merely accidental, and resulted alone from their distrust of each other; and that no act or word of his had any effect whatever in inducing the parties to make or consummate this trade. They placed no reliance upon him except to

count the money and ascertain the true amount that was paid. The state of the title to the land was accessible to complainant as above stated, and he purchased relying upon his own judgment, and not upon Coe. Any other person who might have happened to be convenient would as likely have been called upon to count this money as Coe, and this was all he was relied upon to do. He shows by his own testimony that in point of fact he did not, at the time, know that a lien in his favor existed upon this land. Under these circumstances was he bound to speak and disclose this lien, or be estopped from afterwards asserting it? No equitable estoppel can arise without proof that a wrong has been done upon one side, and injury suffered from it upon the other: Herman on Estoppel, sec. 325.

The doctrine can only apply where some declaration is made or act done to influence the conduct of another, in his dealing, and which actually leads him into a line of conduct which must be prejudicial to him, unless the party so misleading him be cut off from asserting a conflicting right: *Decherd* v. *Blanton*, 3 Sneed, 376.

In *Moses* v. *Sanford*, 2 Lea, 659, this court said: "The principle of estoppel of this character is that the party who is to be affected by it has, by his own word or conduct, misled another in a course of action that if the estoppel is not enforced, will work an injury to him who is thus misled."

In the case of *Morris* v. *Moore*, 11 Hum., 434, it was said: "To justify the application of this princi-

Askins and Wife *v.* Coe.

ple, it is material that the party should be fully apprised of his right, and should by his conduct or gross negligence, encourage or influence the purchase, for if he is wholly ignorant of his right, or the purchaser knows them, or if his acts or silence or negligence *do not mislead,* or in any manner affect the transaction, there can be no just inference of actual or constructive fraud on his part": 1 Story Eq. Jor., sec. 306. The rule here enunciated, we think, clearly applicable to the facts of this case, and is decisive of it.

There is nothing of advantage to the complainants in the second proposition insisted on, that there being no notice to the judgment debtor of the assignment of the judgment, the title had not passed to the assignee, and consequently he had no lien at the time of the conveyance of the land. If this proposition were conceded, it is difficult to see how it could help the case of the complainants. The lien of the judgment certainly existed, and if it had not passed to the assignee it remained in Frizzell, the original plaintiff, and would pass to the assignee upon the consummation of the assignment by the notice subsequently given to the debtor. And certainly if Coe had no title to the judgment at the time of the execution of the conveyance, he could not be estopped from asserting an after-acquired superior lien.

Let the exceptions to the report of the Referees be overruled and the report confirmed, and the decree of the chancellor affirmed with costs.