MECHANICS' BANK & TRUST COMPANY *v.* W. M. HOOD.*

(*Knoxville.*   September Term, 1912.)

1. **GUARANTY.  Guarantor of payment of note is secondarily liable, and binding extension of payment given to maker of note, without guarantor's assent, releases him.**

An accommodation guaranty of the payment of a note, indorsed thereon, with the knowledge of the discounter and holder of the note, though absolute in form, binds the guarantor to pay the note, upon the default of the maker, and his liability is secondary within the meaning of our Negotiable Instruments Law .(Acts 1899, ch. 94, sec. 120), providing that a person "secondarily liable" is discharged by a binding agreement ex- ·tending the time of payment, without his assent, and such extension of the time of payment given by the holder to the maker of such guaranteed note discharges such guarantor not assenting thereto.

Acts cited and construed:   Acts 1899, ch. 94, secs. 119, 120.

2. **SAME.  Same.  Definition of primary and seconaary liability on an instrument has reference to such instrument, and not a guaranty of the payment of the same, indorsed thereon or written on a separate paper.**

The general provision prefixed to our Negotiable Instruments Law (Acts 1899, ch. 94) that the person primarily liable on an instrument is the person who, by the terms of the instrument, is absolutely required to pay the same, and that all other parties are secondarily liable, has reference to the face of the instrument, as apparent from the expression, "the terms of ‚the instrument," and not to contracts referring thereto, which may appear elsewhere; and not even to a guaranty of the payment

---

*As to effect under negotiable instrument law of extension of time to principal to release a surety or guarantor, see note in 31 L. R. A. (N. S.), 149.

of a note, whether indorsed thereon or written on a separate piece of paper; and such provision creates no primary liability, but only a secondary liability, in connection with sections 119 and 120 of said statute.

Acts cited and construed: Acts 1899, ch. 94, secs. 119 and 120.

Cases cited and approved: Taylor v. Ross, 3 Yerg., 330; Hunter v. Dickinson, 10 Humph., 37; Klein v. Kern, 94 Tenn., 34; Banking Co. v. Hall, 119 Tenn., 548; Bank v. Bellamy, 19 N. D., 509.

FROM KNOX.

Appeal from the Chancery Court of Knox County.— R. H. SANSOM, Special Chancellor.

WRIGHT & JONES, for complainant.

SHIELDS, CATES & MOUNTCASTLE, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

This suit was brought upon the following note and guaranty appearing upon the back thereof, viz.:

"$3,000. Knoxville, Tenn., May 2, 1905.

"Six months after date I promise to pay to the order of W. M. Hood, three thousand dollars, payable at the Mechanics' National Bank. All parties to this instrument, whether makers or indorsers, waive demand, notice, and protest, and guarantee the payment of the same, and if suit is instituted upon this note I agree to pay 10 per cent. attorney's fees and all expenses incurred in its collection, same to be taxed up in judgment.

"Due November 2.

Bank v. Hood.

"No. 52144.                    F. McCleneghan."
On the back as follows:

"We as indorsers, waive demand, notice, and protest, and guarantee payment of same, and acknowledge that we sign with the full understanding of this notice.

"W. M. Hood."

The guaranty was executed by Hood for accommodation of McCleneghan, by whom the note was discounted with complainant with the full knowledge of the facts on the part of the latter; that is to say, the original of which the present note was a renewal was so discounted. After the present note was executed, it was extended every six months until November 2, 1907, on consideration of interest paid in advance at the time upon each renewal. This was done without the consent of Hood having been first obtained. In the early renewals there was an effort on the part of the cashier of the bank to preserve the liability of Hood under section 120 of our Negotiable Instruments Act, by stating to McCleneghan, in substance, that the renewal would be operative on delivering a new note with the guaranty of Hood appearing thereon in the same manner in which it appears on the note now sued on. Hood, however, left the State and removed to Baltimore, Md., and other renewals were made without any such agreement between McCleneghan and the cashier, but simply by the payment of the interest in advance. This is certainly true of the last two renewals.

It is insisted by Hood that he was by these renewals released from liability, and we are of the opinion that this contention is well made. It is insisted in behalf of complainant that such renewals would not release the guarantor because of the following paragraph contained in the general provision prefixed to our general Negotiable Instruments Law, which is chapter 94 of the Acts of 1899, viz.: "The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are 'secondarily' liable." This definition has direct bearing upon sections 119 and 120 of the act, which are upon the subject of the discharge of negotiable instruments. They are as follows:

"Sec. 119. A negotiable instrument is discharged:

"1.   By payment in due course, by or on behalf of the principal debtor;

"2.   By payment in due course, by the party accommodated, where the instrument is made or accepted for accommodation;

"3.   By the intentional cancellation thereof by the holder;

"4.   By any other act which will discharge a simple contract for the payment of money:

"5.   When the principal debtor becomes the holder of the instrument at or after maturity, in his own right.

"Sec. 120. A person secondarily liable on the instrument is discharged:

"1   By an act which discharges the instrument;

"2.   By the intentional cancellation of his signature by the holder;

"3.   By the discharge of a prior party;

"4.   By a valid tender of payment made by a prior party;

"5.   By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved;

"6.   By an agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

We are of the opinon that the paragraph quoted from the general provisions has reference to the face of the instrument, as apparent from the expression, "terms of the instrument," and not to contracts referring thereto which may appear elsewhere; certainly not to a contract of guaranty which, while referring to the note, is essentially a contract different therefrom and may be written upon a separate piece of paper. Therefore, although such contracts of guaranty be in form absolute, and binding the guarantor to the duty of payment upon default of the maker of the note, without more, no notice, of course, being required (*Taylor & Williams* v. *Ross,* 3 Yerg., 330; *Hunter* v. *Dickinson,* 10 Humph., 37; *Klein* v. *Kern,* 94 Tenn., 34, 28 S. W., 295; *Banking Co.* v. *Hall,* 119 Tenn., 548, 108 S. W., 1068), yet it would not by the aforesaid preliminary provision. This provision fall within the definition of primary liability covered

Bank v. Hood.

is the same as section 192 of the original Negotiable Instruments Act recommended by the National Conference of State Boards of Commissioners, and the same as section 6494 of the Revised Code of North Dakota, which is construed and applied in the case of *Northern State Bank of Grand Forks* v. *James Bellamy,* 19 N. D., 509, 125 N. W., 888, 31 L. R. A. (N. S.), 149, in which a conclusion similar to that stated here was reached on an obligation in substantially the same words. It follows that an obligation of this character is a secondary one, within the meaning of section 120 of the act, and that it would be discharged by a binding extension of time given the principal debtor by the holder.

It follows there is no error in the decree of the chancellor, and it is affirmed.